C. TONY PICCUTA (AZ SBN: 028444)
SCOTTSDALE INJURY LAWYERS, LLC
8700 E. Pinnacle Peak Road, Suite 204
Scottsdale, Arizona 85255
Telephone: (480) 900-7390
Facsimile: (480) 562-6060
tony@scottsdaleinjurylawyers.com

Attorney for Plaintiff, Prasant Patel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Prasant Patel,<br><br>Plaintiff,<br><br>v.<br><br>Officer Dominique Vattuone (#1493), in his individual capacity, and Does 1–10, inclusive,<br><br>Defendants. | No. 2:22-CV-01852-MTL-MTM<br><br>**PLAINTIFF PRASANT PATEL'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff, Prasant Patel ("Patel"), by counsel, pursuant to Federal Rule of Civil Procedure 56 and LRCiv 56.1, submits this Response in Opposition to Defendant's Motion for Summary Judgment and sets forth as follows:

## I. INTRODUCTION

Established precedent and disputed questions of material fact prohibit the grant of summary judgment to Defendant. Because the excessive force inquiry necessarily requires a jury to sift through contested facts and make appropriate inferences, summary judgment should only be granted sparingly and in obvious cases. This is not that type of case.

## II. STATEMENT OF MATERIAL FACTS

In the early hours of September 22, 2021, Patel was celebrating his bachelor party at Casa Amigos, in Scottsdale, Arizona. (Plaintiff's Controverting Statement of Facts

[“PSOF”] ¶¶ 1, 19.) Patel and his cousin, Shivam, bought a round of shots for several women. (PSOF ¶ 2.) One of the women accused Patel and Shivam of slipping something into her drink. (PSOF ¶ 2.) A Casa Amigos security guard then escorted Shivam from the bar. (PSOF ¶ 1.) Patel voluntarily followed and went outside to check on Shivam. (PSOF ¶ 1.)

Defendant, Officer Vattuone (“Vattuone”), of the Scottsdale Police Department, was flagged down by the security guard who had escorted Shivam from the bar. (PSOF ¶ 1.) The security guard informed Vattuone that Patel and his cousin had been accused of slipping something into a woman’s drink. (PSOF ¶ 2.) Patel and Shivam consented to searches of their persons by Vattuone. (PSOF ¶ 68.) Vattuone conducted the searches and found no evidence to support the accusations against them. (PSOF ¶ 68.) Vattuone communicated to Patel that he had found no evidence to support the accusations, that Patel and his friends were not in any trouble, and that they would be free to leave after paying their tab. (PSOF ¶ 13, 15.)

Patel, who was intoxicated, was confused and worried because of the accusations made against him and was critical of Vattuone for not securing the video surveillance that would exonerate him. (PSOF ¶ 16.) Over the course of several minutes, he asked Vattuone to review the security footage and to investigate the female patron whom he believed had made a false accusation against him. (PSOF ¶ 16.) Patel continually sought answers from Vattuone, in a questioning tone, about his accuser. (PSOF ¶ 16.) Vattuone told Patel to “shut your fucking mouth,” and said “you’re acting like a little bitch right now.” (PSOF ¶ 72.) Vattuone also told Patel that he was not his babysitter, and that he was going to put Patel in a timeout. (PSOF ¶ 73.) Officer Valentine told Patel to sign his bar bill so “you can go home, and then we’re done with you.” (PSOF ¶ 21.) Patel apologized and signed his tab. (PSOF ¶ 22.)

Patel and his friends remained on the sidewalk in front of Casa Amigos. (PSOF ¶ 24.) They engaged in horseplay but did not knock down or disrupt any passersby. (PSOF ¶ 24.) Patel left his friends and reapproached Vattuone, who was near the

entrance to Casa Amigos. (PSOF ¶¶ 27, 28.) Vattuone did not give Patel a command to move back. (PSOF ¶ 29.) Vattuone also did not step back to create more space between himself and Patel, though he could have done so. (PSOF ¶ 29.) During this interaction between Patel and Vattuone, Patel remained confused and worried and again sought answers from Vattuone in a questioning tone. (PSOF ¶¶ 30, 33, 34.) Patel raised his hands in a questioning manner, but never in a threatening manner, while holding his wallet and credit card. (PSOF ¶ 30, 33, 34.) Vattuone did not believe that Patel would be able to take any of his weapons from him. (PSOF ¶ 34.) Also, Patel never touched Vattuone or any other officer. (PSOF ¶ 30.)

The moment before Vattuone went hands on with Patel, Vattuone was speaking to Patel in a demeaning tone. (PSOF ¶ 75.) Patel raised his hands in disbelief, with his wallet and credit card still in one hand and told Vattuone that Vattuone was not using his actual voice. (PSOF ¶ 75.) Vattuone resorted to physical force and took hold of Patel's hands. (PSOF ¶ 36.) Vattuone never informed Patel that he was under arrest. (PSOF ¶ 74.) Nor did he command Patel to turn around and put his hands behind his back, though he believed that he had time to do so. (PSOF ¶ 74.) When Vattuone went hands-on with Patel, Patel was not attempting to evade arrest or escape. (PSOF ¶ 76.) Nor had Patel swung on Vattuone, pushed him, made a closed fist, or taken a fighting stance. (PSOF ¶ 76.) At the time, Vattuone was 6'4" and weighed 215 pounds while wearing his tactical gear. (PSOF ¶ 69.) Patel was 5'6", 160 pounds. (PSOF ¶ 69.)

After Vattuone grabbed Patel's hands, Vattuone brought them down to Patel's sides. (PSOF ¶ 37.) Patel did not push back, did not have his hands together, did not have his fingers interlocked, and did not break Vattuone's hold. (PSOF ¶ 37.) Vattuone pushed Patel backwards, intentionally released his hold of Patel, and delivered a knee strike. (PSOF ¶ 37.) Vattuone then spun Patel around, put his arm around his neck, and slammed him against a fence. (PSOF ¶ 42.) During this, Patel was not resisting arrest, twisting or pulling away. (PSOF ¶ 42.) Vattuone made no attempt to handcuff Patel before taking him to the ground. (PSOF ¶ 41.) Instead, Vattuone threw Patel to the

ground, face first, breaking Patel's nose. (PSOF ¶ 43.) As they went to the ground, Vattuone said, "he wants to keep it up, you wanna keep it up?" (PSOF ¶ 78.)

Vattuone had control of Patel's left hand when they went to the ground. (PSOF ¶ 45.) Patel landed on his own right hand with Vattuone on top of him. (PSOF ¶ 45.) Vattuone mounted Patel with both legs straddling his midsection and delivered a closed fist strike to Patel's head. (PSOF ¶ 45.) At the same time, Valentine grabbed both of Patel's legs. (PSOF ¶ 45.) Vattuone commanded Patel to give him his right hand and said, "I'm about to tase you into next fucking week." (PSOF ¶ 78.) Officer Leyba then grabbed the back of Patel's head at the base of his skull with both hands. (PSOF ¶ 45.) Vattuone told Leyba to let go of Patel's head and neck. (PSOF ¶ 45.) Leyba did so, exposing Patel's head and neck, and Vattuone delivered three brachial stuns and a knee strike. (PSOF ¶¶ 45, 77.)

Patel was not engaged in active resistance. (PSOF ¶ 45.) Accordingly, Vattuone only cited Patel for engaging in ***passive resistance*** in violation of ARS 13-2508(A)(3). (PSOF ¶ 49.) The weight of Vattuone prevented Patel from giving up his right hand immediately once he was taken to the ground. (PSOF ¶ 45.) When Vattuone shifted his weight, Patel yelled, "I'm giving you my hand," and voluntarily placed his right hand on the back of his head. (PSOF ¶ 45.) Leyba seized and took control of Patel's right hand. (PSOF ¶ 45.) Vattuone placed Patel's left hand on the back of Patel's head and maintained control of it. (PSOF ¶ 45.) Then, with Patel's hands secured to the back of his head, Vattuone tased Patel in drive stun mode. (PSOF ¶¶ 45, 78.) Vattuone did not believe that Patel was armed and had five assisting officers, including two officers other than Valentine and Leyba who were standing over Patel during Vattuone's use of force. (PSOF ¶¶ 45, 70, 71.) After Patel was handcuffed, Vattuone turned and pointed to the other individuals in Patel's party and asked, "you want next?" (PSOF ¶ 79.)

When Patel wrote the apology letter and left the voicemail for Vattuone during Patel's criminal case, Patel had not reviewed or not carefully reviewed that portion of the body worn camera footage depicting Vattuone's use of force. (PSOF ¶ 80.) A

complete and closer review of the video footage is what prompted Patel to file the subject civil lawsuit. (PSOF ¶ 80.)

## III. STANDARDS GOVERNING SUMMARY JUDGMENT

The basic standard for granting summary judgment is that the court must find that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The usual rules of summary judgment apply to video evidence, e.g., all reasonable inferences that can be drawn from a video must be drawn in the non-movant's favor. *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1 (9th Cir. 2007).

## IV. LAW AND ARGUMENT

### A. VATTUONE IS NOT ENTITLED TO QUALIFIED IMMUNITY ON PATEL'S CLAIM OF EXCESSIVE FORCE.

When a party moving for summary judgment raises the qualified immunity defense, the non-moving party must show that 1) "the officer's conduct violated a constitutional right" and 2) that the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). As in other cases, the facts alleged must be "[t]aken in the light most favorable to the party asserting the injury." *Id.*

Vattuone asserts that it is helpful to divide the uses of force into three stages.[1] Patel disagrees. The first stage discussed by Vattuone concerns pre-arrest conduct and Vattuone's purported attempt to handcuff Patel. The problem with Vattuone's focus on

---

[1] Vattuone divides into stages the uses of force but not the government's interest in the uses of force nor the balancing of interests. Patel will perform complete and distinct analyses of each of the two uses of force Patel contends are at issue.

the pre-arrest conduct is that Vattuone relies on his own disputed version of events. The Court must take Patel's facts as true. Believing Patel's evidence, Patel was not fighting with anyone, Patel was not thrusting his hands toward Vattuone in a threatening manner, and Vattuone did not believe that Patel could grab any of Vattuone's weapons. Crediting Patel's evidence, Vattuone made no attempt to handcuff Patel before taking him to the ground. Also, Patel never claimed that Vattuone attempted to handcuff him in violation of his constitutional rights. As such, it is more constructive to break down the issues into two stages: 1) the takedown and 2) the strikes and tasing once on the ground. These align with Vattuone's stages 2 and 3.

**1. Vattuone's Takedown of Patel Violated Patel's Fourth Amendment Right to Be Free From the Use of Excessive Force.**

A three-step approach to the *Graham* balancing test was articulated by the Ninth Circuit in *Glenn v. Washington Cnty*., 673 F.3d 864, 871 (9th Cir. 2011). First, the court analyzes the nature and quality of the intrusion on the person's Fourth Amendment rights. *Id*. Next, the court assesses the interest of the government in the use of force. *Id*. Lastly, the court balances the gravity of the intrusion against the need of the government for the intrusion. *Id*. The Ninth Circuit has also recognized that the Supreme Court did not limit the reasonableness determination to the factors set forth in *Graham*. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

**a. Vattuone's Takedown of Patel Was a Substantial Intrusion on Patel's Fourth Amendment Rights.**

The nature and quality of the intrusion on an individual's Fourth Amendment rights is evaluated by considering the type and amount of force used. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022). Vattuone performed a vicious takedown of Patel, slamming him face first into the sidewalk, breaking his nose. This was a severe and substantial intrusion on Patel's Fourth Amendment rights. *See Rice v. Morehouse*, 989 F.3d 1112 (9th Cir. 2021) (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).

**b. The Governmental Interest Involved Did Not Justify Such a Substantial Use of Force.**

The government's interest is evaluated by looking to three primary factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Glenn*, 673 F.3d at 872 (citing *Graham*, 490 U.S. at 396). However, these factors are not exclusive. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). A court will consider whatever factors may be appropriate under the circumstances of the case. *Id*. (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

**i. Severity of the Crime**

Vattuone references criminal activity toward a female bar patron, passersby and the officers. Vattuone himself exonerated Patel regarding the bar patron. As to passersby, Patel and his friends were engaged in horseplay on the sidewalk, and no one was disrupted or knocked down.

Regarding the officers, Vattuone argues that Patel disobeyed commands and actively resisted arrest.[2] There is a dispute of fact as to whether Patel actively resisted arrest. Patel was arrested for passive resistance. From the video, it can be inferred that Patel engaged in no more than passive resistance or none at all. Vattuone went hands on, brought Patel's hands down to his side, voluntarily released Patel's hands, and delivered a knee strike. Vattuone spun Patel around, put his arm around his neck, slammed him against the fence, and threw him to the ground. A reasonable jury could conclude from the video that Patel engaged in no resistance at all, much less active resistance. Patel did disobey Vattuone's commands and was cited for Failure to Obey a Police Officer (SRC § 19-13), Disorderly Conduct Fighting (A.R.S. § 13-2904(A)(1)), Disorderly Conduct Disruptive Behavior (A.R.S. § 13-2904(A)(1)) and Resisting Arrest (passive resistance)

[2] Vattuone also mentions threats to law enforcement. Patel will address this under the issue of whether Patel posed an immediate threat to the safety of the officers or others.

(A.R.S. § 13-2508(A)(3)). This misdemeanor criminal activity did not justify slamming Patel to the pavement and breaking his nose.

**ii. Immediate Safety Threat**

"The most important factor is whether the individual posed an immediate threat to the safety of the officers or others." *Glenn*, 673 F.3d at 871 (internal quotation marks omitted). The perspective through which this determination must be made is that of a reasonable officer. *See Graham*, 490 U.S. at 396. Vattuone claims that Patel was erratic, increasingly aggressive, refused to maintain a safe distance, actively resisted and fought. The flaw with Vattuone's argument is that he again takes his facts as true. Patel had not been fighting with his companions and was not actively resisting arrest. Vattuone never commanded Patel to move back, nor did Vattuone attempt to move back, though he had the opportunity to do so.

As to Patel's alleged aggression toward Vattuone, Patel was confused and worried because of the accusations made against him. He was looking for answers in a questioning tone. Patel was not waving his hands aggressively at Vattuone or in a threatening manner. Patel raised his hands in a questioning manner while holding his wallet and credit card. The moment before Vattuone went hands on with Patel, Vattuone was speaking to Patel in a demeaning tone. Patel raised his hands in disbelief, with his wallet and credit card still in one hand. Patel told Vattuone that Vattuone was not using his actual voice. Importantly, Patel did not swing on Vattuone, did not push him, and did not take a fighting stance. Vattuone had already searched Patel, did not believe that Patel was armed, and did not believe that Patel was going to be able to take any of Vattuone's weapons from him.

A critical point is that "precedent requires that we focus on the *immediate* threat of harm." *Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022) (emphasis added). Courts must "consider the danger a suspect poses *at the time force is applied*." *Id.* (internal quotation marks omitted). When Vattuone slammed Patel to the pavement, Vattuone was and had been in full control of Patel, physically. Any threat reasonably

perceived by Vattuone had abated and, even if it had not, did not justify a severe use of force.

**iii. Active Resistance or Evasion**

As Vattuone admitted, Patel was not attempting to evade arrest or escape. However, Vattuone contends that Patel was actively resisting. Patel was arrested for passive resistance. Vattuone claims that he charged Patel with only passive resistance because he did not want to ruin Patel's bachelor party weekend. The video evidence belies this claim.

Resistance is not a binary state. *Bryan*, 630 F.3d at 830. "Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Id*. In *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994), refusing to move was classified as passive resistance. In *Smith*, a suspect refused officer commands not to re-enter his home and to remove his hands from his pockets. 394 F.3d at 703. The suspect also physically resisted for a brief period. *Id*. The court found that this level of resistance was not "particularly bellicose" and provided little support for a significant use of force. *Id*. Similarly, in *Rice*, where the suspect was not actively resisting, the court found the government's interest in a takedown, which it characterized as a substantial use of force, to be minimal. 989 F.3d at 1123.

Vattuone admitted that Patel did not swing on him, did not push him, and did not so much as take a fighting stance. Viewing the video evidence in the light most favorable to Patel, Patel's hands were never together or interlocked, though that fact would be largely immaterial to the characterization of this level of resistance as mostly passive. Patel did no more than tense up and clench his fists while they were at his side. This sort of conduct would be no more than passive or minor resistance as in *Bryan*, *Forrester* and *Smith*. However, a reasonable jury could conclude that at the time of the takedown, Patel was not resisting at all. After Vattuone initially forced Patel's hands down, Vattuone took full control of Patel. Patel was not twisting, pushing or pulling away.

Vattuone spun him around, put his arm around Patel's neck, pushed him against the fence, and slammed him to the ground while in complete control of Patel. This third *Graham* factor provides little to no justification for the state's interest in such a substantial use of force.

**iv. Other Factors**

Another factor in the reasonableness determination is the availability of less intrusive alternatives. *Glenn*, 673 F.3d at 876. Vattuone admitted that he could have commanded Patel to turn around and put his hands behind his back. The number of officers present is a "highly relevant" factor. *Green v. City and Cnty. of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 214) (citing *Washington v. Lambert*, 98 F.3d 1181, 1190 (9th Cir. 1996)). Here, Vattuone had five assisting officers available to him. Both of these factors weigh against the aggressive takedown of Patel.

**c. The Government's Interest in the Use of Substantial Force Did Not Justify the Gravity of the Intrusion on Patel's Fourth Amendment Rights.**

The balance here is similar to *Rice*. First, the takedown involved a substantial use of force. Patel was thrown to the pavement and his nose was broken. Second, Patel engaged in no more than misdemeanor criminal activity by disobeying commands and, at most, passively resisting *prior* to the use of force at issue. He presented no immediate threat to the officers or others. When Vattuone performed the takedown, Vattuone had his arm around Patel's neck and was in complete control. Vattuone had already searched Patel and had no reason to believe that he was armed. Also, Patel was not actively resisting or attempting to evade arrest. Any perceived passive resistance had terminated prior to the takedown. On balance, a jury could reasonably conclude that the government's minimal interest in the use of force against Patel did not justify the substantial amount of force used against him.

**2. The Strikes and Tasing of Patel Also Violated Patel's Fourth Amendment Rights.**

**a. Vattuone's Tasing of Patel in Drive-Stun Mode Was a Relatively Significant Use of Force.**

A taser used in dart-mode constitutes a significant level of force. *Bryan*, 630 F.3d at 826. Here, Patel was tased in drive-stun mode. This is considered a lower level of force than a taser used in dart mode. *Brooks v. City of Seattle*, 599 F.3d 1018, 1027–28 (9th Cir. 2010), *on reh'g en banc sub nom. Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011). However, the Ninth Circuit has not specifically characterized the nature and quality of the intrusion of a taser used in drive-stun mode. Regardless, as the *Mattos* court explained, all that matters is whether the tasing was reasonable, keeping in mind the electric shock and the pain caused by a taser in drive-stun mode. 661 F.3d 443. Here, from the video, Patel's screams are clearly audible. This was not an insignificant amount of force.

**b. The Governmental Interest Did Not Justify Tasing and Striking Patel.**

**i. Severity of the Crime**

Patel engaged in no more than misdemeanor criminal activity by disobeying a police officer. Viewing the video evidence favorable to Patel, there is a genuine dispute as to whether a reasonable officer would have perceived Patel guilty of resisting arrest. Even on Vattuone's evidence, the resistance was no more than passive. That Vattuone characterized it as otherwise does not make it so. This relatively minor criminal activity provided little justification to tase and strike Patel.

**ii. Immediate Safety Threat**

Again, it is the immediacy of the threat that must be considered. *Andrews*, 35 F.4th at 717. When Vattuone struck and tased Patel, Patel was face down on the pavement surrounded by six officers. Vattuone had Patel's left hand pinned to the back of Patel's head, Leyba had Patel's right hand pinned to the back of Patel's head, and Valentine was holding Patel's legs. Patel had been searched, and Vattuone did not believe that Patel was armed. Even if Patel had wanted to reach for a weapon, no reasonable officer would have believed that he was capable of doing so. Patel presented

no immediate threat of harm to anyone when he was struck and tased or in the moments before.

**iii. Active Resistance and Evasion**

There is no genuine dispute that while Patel was on the ground with Vattuone on his back, Patel was not attempting to evade arrest by flight. Also, a reasonable jury could conclude that Patel was not resisting, passively or actively. Vattuone took Patel to the ground and landed with his weight on Patel's back. Patel's hand was pinned under himself by the weight of Vattuone. Only when Vattuone shifted his weight could Patel give up his right hand, which he did. Vattuone, Valentine and Leyba had control of Patel when Vattuone struck him multiple times. Vattuone and Leyba had Patel's hands pinned to the back of Patel's head and Valentine was holding Patel's legs when Vattuone tased Patel. Patel was not actively resisting at this time; he was helpless. Even taking Vattuone's version of events as true, Patel refused to give up his hands from the back of his head. This would again be more akin to the minor or passive resistance found in *Bryan*, *Blankenhorn*, *Forrester*, and *Smith*.

The Ninth Circuit has repeatedly found the use of a taser, in dart mode and drive-stun mode, to be unreasonable when a suspect is engaged in only minor or passive resistance. *Bryan*, 630 F.3d at 826 (dart mode); *Thomas v. Dillard*, 818 F.3d 864, 890 (9th Cir. 2016) (dart mode); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013) (dart mode); *Mattos*, 661 F.3d at 445–46 (drive-stun mode). "The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Gravelet-Blondin*, 738 F.3d at 1093. Likewise, the Ninth Circuit has found that punching or striking a suspect who is not manipulating his arms to avoid being handcuffed is a Fourth Amendment violation. *Blankenhorn*, 485 F.3d at 482. Tasing and striking Patel while he was helpless and pinned to the ground, under the officers' full control, was not trivial. Whether it is determined that Patel was passively resisting or not resisting at all, tasing and striking him was not warranted under the circumstances.

**iv. Other Factors**

That there were less intrusive alternatives should again be considered. *Glenn*, 673 F.3d at 876. Patel's hands were behind his head, and he was being controlled by multiple officers when he was struck and tased. Vattuone could have simply applied handcuffs. The number of officers present is also again a "highly relevant" factor. *Green*, 751 F.3d at 1047 (9th Cir. 214) (citing *Washington*, 98 F.3d at 1190). Vattuone had five assisting officers available to him. Both of these factors weigh against the striking and tasing.

**c. The Government's Interest in Using Force Did Not Justify the Gravity of the Intrusion on Patel's Fourth Amendment rights.**

The balance here is again similar to *Rice* and *Blankenhorn*, though both involved a takedown. The balance is also similar to *Mattos* and any number of cases involving a taser or nontrivial use of force; misdemeanor criminal activity; no *immediate* threat to the safety of the officers or others; and no attempt to evade arrest by flight or active resistance. Also, there were numerous officers present and less intrusive alternatives available to Vattuone. Genuine disputes of material fact would allow a reasonable jury to conclude that the government's interest in the intrusion on Patel's Fourth Amendment rights did not justify the tasing and striking of Patel.

**2. Vattuone's Takedown, Striking and Tasing of Patel Violated Patel's Clearly Established Fourth Amendment Rights.**

While Vattuone cites the applicable standard, he does not expressly argue the second prong of the qualified immunity analysis. ***As such, the only issue before the Court is whether Vattuone violated Patel's Fourth Amendment rights.*** However, even if the issue had been raised, the law was clearly established at the time that Vattuone's takedown, striking and tasing of Patel were excessive uses of force.

As cited above, "[t]he right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Gravelet-Blondin*, 738 F.3d at 1093. In *Rice*, the takedown involved a substantial use of force resulting in the arrestee being thrown face first to the pavement. 989 F.3d at 1121. Here, as in *Rice*, Vattuone slammed Patel to the pavement, breaking his nose. Patel engaged in

no more than misdemeanor criminal activity by disobeying commands and, at most, passively resisted *prior* to the use of force. He presented no immediate threat to the officers or others and was not attempting to evade arrest. *Rice* gave Vattuone sufficient notice of the unconstitutionality of the takedown. *See Rice*, 989 F.3d at 1125.

Regarding the striking and tasing of Patel, binding precedent again established that the use of force was excessive at the time of the incident. In *Mattos*, as here, the suspect was tased in drive-stun mode. 661 F.3d at 443. The criminal offenses were not severe. *Id*. at 444. Though the suspect became agitated and uncooperative, she did not verbally threaten the officers and gave no indication that she was armed. *Id*. At the time the suspect was tased, "she no longer posed even a *potential* threat to the officers' or others' safety, much less an 'immediate threat.'" *Id*. Finally, though the suspect at first resisted by refusing to get out of her car, she did not take any violent actions toward the officers. *Id*. at 445. The facts in *Mattos* are similar enough to have provided Vattuone sufficient notice that his tasing of Patel was unconstitutional. Similarly, *Blankenhorn* provided notice that a reasonable officer could not strike an individual to free their arms to complete a handcuffing when that individual was not manipulating his arms to avoid being handcuffed. *Blankenhorn*, 485 F.3d at 482. To do otherwise constitutes a Fourth Amendment violation. *Id.*

## B. VATTUONE IS NOT ENTITLED TO QUALIFIED IMMUNITY ON PATEL'S CLAIM OF FIRST AMENDMENT RETALIATION.

### 1. Vattuone's Retaliatory Conduct Violated Patel's First Amendment Right to Free Speech.

Vattuone's reliance on *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019), is misplaced. In *Nieves*, the Court held that a plaintiff asserting a retaliatory arrest claim must plead and prove the absence of probable cause for an arrest. 587 U.S. at 402. In the instant action, Patel's claim is not based on a retaliatory arrest. The retaliatory conduct complained of is Vattuone delivering a knee strike, pushing Patel into the fence, slamming Patel to the ground, then striking and tasing Patel.

To establish a § 1983 First Amendment retaliation claim, a plaintiff must show the following:

> (1) [he] engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech.

*Ariz. Students' Ass'n. v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (internal quotation marks omitted).

Regarding the first element, Patel questioned Vattuone as to why he was not investigating the false accusations made against Patel. He then accused Vattuone of speaking to him in a demeaning tone and not using his actual voice. Vattuone does not contest that this amounted to constitutionally protected speech.

Concerning the second element, Vattuone does not dispute that the alleged force used against Patel would chill a person of ordinary firmness from continuing to engage in First Amendment activity. Consistently, Ninth Circuit authority has recognized that police action, including search, seizure and arrest, would chill a person of ordinary firmness. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) (retaliatory arrest); *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) (search and seizure).

Finally, Patel must show that Vattuone's desire to chill Patel's speech was a but-for cause of Vattuone's conduct. *See Nieves*, 587 U.S. at 399. This means "that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. "Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available." *Mendocino Envtl. Ctr. v Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999) (internal quotation marks and citations omitted). However, intent to inhibit speech can be demonstrated through circumstantial evidence. *Id.* at 1300–01. Patel questioned Vattuone and accused him of speaking in a demeaning tone. In the middle of Patel's

verbal challenges, Vattuone went hands on, ultimately slamming Patel to the ground, striking him and tasing him. Construing the facts in the light most favorable to Patel, a reasonable jury could conclude that Vattuone reverted to these uses of force because of Patel's questioning and verbal challenges.

**2. Vattuone's Retaliatory Conduct Violated Patel's Clearly Established First Amendment Rights.**

Vattuone again fails to expressly raise the second prong of the qualified immunity analysis. Even if he had, it was clearly established at the time that an officer may not take such adverse action against a passive or non-resistant arrestee for exercising his right to question and verbally challenge the officer.

In *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462–63 (1987), the Supreme Court recognized "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest." The Court acknowledged "the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint." *Id.* at 472. Also instructive is *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372 (9th Cir. 1990). In *Duran*, the court explained that the principle was "well established" that "police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity." *Id.* at 1379. Further, that "any action to punish or deter [protected] speech…is categorically prohibited by the Constitution." *Id.* at 1378; *see also Ford v. Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013) ("Police officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech.") (citing *Duran*, 904 F.2d at 1375–78) *abrogated on other grounds by Nieves*, 587 U.S. 391. Viewing the evidence in the light most favorable to Patel, his questioning and verbal challenges caused Vattuone to use and escalate the use of force against him. Based on *Hill*, *Duran* and *Ford*, a reasonable officer in Vattuone's position would have been on notice that it was unlawful to use the amount of force at issue in response to Patel's exercise of protected speech.

**C. JUDICIAL ESTOPPEL IS INAPPLICABLE TO PATEL'S CLAIMS.**

Vattuone argues that Patel took a position in this lawsuit that is "clearly inconsistent" with his criminal case. There is no authority to support that because an individual makes an apology to the arresting officer during a criminal proceeding that person is precluded from bringing a civil action arising out of the officer's use of force during the arrest. Even if there were, Patel's position in this case is not clearly inconsistent with his earlier position. Patel explained at his deposition in this case that he had not reviewed, or not reviewed closely, all of the body worn camera footage when he apologized to Vattuone. Patel fully and more carefully reviewed Vattuone's use of force after apologizing to Vattuone. That is what prompted Patel to file a civil action. Patel also explained at his deposition that he still was sorry for the way he acted, though he did not believe it justified the amount of force used against him.

Vattuone next argues, again without any citation to authority, that Patel persuaded the Veteran's Court to accept the position set forth in his apology letter. He also claims that Patel would derive an unfair advantage if he were permitted to take a position in this lawsuit clearly inconsistent with the position he took in his criminal case. The problem for Vattuone, with these two arguments, is that they require an inconsistent position. Because Patel did not take a clearly inconsistent position, none of the three factors identified in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) supports the application of judicial estoppel.

## IV. CONCLUSION

Based on the foregoing, Patel respectfully requests that the Court deny Defendant's Motion for Summary Judgment

Dated: ___October 30, 2024___

SCOTTSDALE INJURY LAWYERS, LLC
/s/ C. Tony Piccuta
C. Tony Piccuta
Attorney for Plaintiff
Prasant Patel